2014-1627

# United States Court of Appeals
# for the Federal Circuit

CLEARLAMP, LLC,

*Appellant*,

v.

LKQ CORPORATION,

*Appellee*,

and

MICHELLE K. LEE, DEPUTY DIRECTOR,
U.S. PATENT AND TRADEMARK OFFICE,

*Intervenor.*

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2013-00020**

**BRIEF OF APPELLEE LKQ CORPORATION**

Alan L. Barry
Jason A. Engel
Benjamin E. Weed
**K&L GATES LLP**
70 W. Madison St., Suite 3100
Chicago, IL  60602
(312) 372-1121

October 30, 2014                    Attorneys for LKQ Corporation

## <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel of record certifies the following:

1.    The full name of every party or amicus represented by me is:

LKQ CORPORATION

2.    The name of the real party in interest represented by me is:

LKQ CORPORATION

3.    All parent corporations and publicly held companies that own 10 percent or more of stock of the party or amicus curiae represented by me are:

NONE

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**K&L Gates LLP**:    Alan L. Barry, Jason A. Engel, Benjamin E. Weed, Viren S. Soni, Kacy L. Dicke

**Perkins Coie LLP**:    Heather A. Boice

/s/Jason A. Engel
Jason A. Engel

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................... I

TABLE OF CONTENTS ............................................................................. II

TABLE OF AUTHORITIES ........................................................................ V

TABLE OF ABBREVIATIONS ................................................................. VIII

STATEMENT OF RELATED CASES ............................................................ 1

STATEMENT OF THE ISSUES ................................................................... 2

STATEMENT OF THE FACTS .................................................................... 4

    I.      THE '364 PATENT ........................................................... 4

    II.     THE AT-ISSUE CLAIMS ................................................... 5

    III.    THE BOARD'S LEGAL CONCLUSIONS ....................................... 6

          A.    The Board's Claim Construction Conclusions .......................... 6

              1.    The "Removing An Original Clear Coat" Limitation ...... 7

              2.    The "Statically Neutralizing" Limitation ........................ 8

          B.    The Board's Other Legal Conclusions ...................................... 9

    IV.    THE BOARD'S FACTUAL FINDINGS ........................................... 9

          A.    The "Spraying A Replacement Clear Coating" Limitation ...... 10

          B.    The "Removing An Original Clear Coat" Limitation.............. 10

          C.    The "Statically Neutralizing" Limitation................................. 11

          D.    The Board's Other Factual Findings........................................ 12

SUMMARY OF THE ARGUMENT ............................................................. 13

STANDARDS OF REVIEW ....................................................................... 17

ARGUMENT ........................................................................................ 20

I.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
      FINDING THAT THE PRIOR ART DISCLOSES THE
      "SPRAYING A REPLACEMENT CLEAR COATING"
      LIMITATION .................................................................................20

      A.    Substantial evidence supports the Board's finding that the
            prior art discloses the "spraying an original clear coat"
            limitation. ..............................................................................21

      B.    Clearlamp's "spraying" arguments misrepresent the record. ...23

      C.    The Board did not legally err. ..................................................25

II.   THIS COURT SHOULD AFFIRM THE BOARD'S FINDING
      THAT THE PRIOR ART OF RECORD DISCLOSES THE
      "REMOVING AN ORIGINAL CLEAR COAT" LIMITATION ......26

      A.    Substantial evidence supports the Board's finding that the
            "removing an original clear coat" limitation is disclosed
            even under Clearlamp's narrow construction. ..........................28

            1.    Substantial documentary and testimonial evidence
                  supports the Board's finding...........................................28

                  (1)    The Board's analysis is based on documentary
                         evidence presented in the Petition........................31

                  (2)    The Board properly used the trial testimony
                         from Clearlamp's expert to confirm its analysis
                         of the prior art.......................................................34

                  (3)    Clearlamp's inability to rebut LKQ's evidence
                         does not mean the Board shifted the burden to
                         Clearlamp. ............................................................35

      B.    The Board's construction of the "removing an original clear
            coat" limitation is correct as a matter of law. ..........................36

            1.    The Board correctly construed this limitation...............37

            2.    Clearlamp failed to make the requisite showing to
                  import a limitation into the claims..................................40

III.    THE BOARD CORRECTLY CONCLUDED THAT THE PRIOR ART OF RECORD DISCLOSES THE "STATICALLY NEUTRALIZING" LIMITATION OF CLAIM 13............................43

    A.    The Board correctly declined to import a sequencing limitation into Claim 13. ............................................................44

    B.    If this Court imports a sequencing limitation into claim 13, remand is appropriate..................................................48

IV.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDINGS REGARDING SECONDARY CONSIDERATIONS ....49

V.    THE BOARD DID NOT PROCEDURALLY ERR...........................53

    A.    The Board correctly applied the broadest reasonable interpretation standard. ............................................................53

    B.    The Board properly considered LKQ's Reply and the evidence submitted therewith. ..................................................57

VI.    IF THIS COURT DOES NOT AFFIRM, IT SHOULD REMAND...61

CONCLUSION ..........................................................................................63

# TABLE OF AUTHORITIES

## Cases

*Brand v. Miller*
  487 F.3d 862 (Fed. Cir. 2007) ..........................................................19

*Consolidated Edison Co. v. NLRB*
  305 U.S. 197 (1938)..........................................................................17

*Consolo v. Fed. Mar. Comm'n*
  383 U.S. 607 (1966)..........................................................................17

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*
  469 F.3d 1005 (Fed. Cir. 2006) ........................................................55

Dickinson v. Zurko
  527 US 150 (1999)............................................................................20

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*
  464 F.3d 1356 (Fed. Cir. 2006) ................................................. 18, 49

*Epistar Corp. v. Int'l Trade Comm'n*
  566 F.3d 1321 (Fed. Cir. 2009) ........................................................40

*Finisar Corp. v. DirecTV Group, Inc.*
  523 F.3d 1323 (Fed. Cir. 2008) ........................................................18

*Hill-Rom Svcs., Inc. v. Stryker Corp.*
  755 F.3d 1367 (Fed. Cir. 2014) ..................................... 15, 40, 42, 45

*Hughes Tool Co. v. Dresser Industries Inc.*
  816 F.2d 1549 (Fed. Cir. 1987) ........................................................51

*In re Applied Materials, Inc.*
  692 F.3d 1289 (Fed. Cir. 2012) ................................................. 17, 18

*In re Bigio*
  381 F.3d 1320 (Fed. Cir. 2004) ........................................................54

*In re Gartside*
  203 F.3d 1305 (Fed. Cir. 2000) ............................... 17, 20, 28, 61

*In re Gleave*
  560 F.3d 1331 (Fed. Cir. 2009) ........................................................17

*In re Kotzab*
  217 F.3d 1365 (Fed. Cir. 2000) ........................................................17

*In re Rambus, Inc.*
694 F.3d 42 (Fed. Cir. 2012) ............................................................55

*In re Reuter*
670 F.2d 1015 (C.C.P.A. 1981) ........................................................54

*In re Skvorecz*
580 F.3d 1267 ...................................................................................56

*In re Sullivan*
362 F.3d 1324 (Fed. Cir. 2004) ........................................................53

*Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*
738 F.3d 1337 (Fed. Cir. 2013) ........................................................18

*Interactive Gift Express, Inc. v. Compuserve Inc.*
256 F.3d 1323 (Fed. Cir. 2001) ....................................................8, 44

*KSR Int'l Co. v. Teleflex Inc.*
550 U.S. 398 (2007)..................................................................... 18, 28

*Leo Pharm. Products, Ltd. v. Rea*
726 F.3d 1346 (Fed. Cir. 2013) ........................................................54

*Liebel-Flarsheim Co. v. Medrad, Inc.*
358 F.3d 898 (Fed. Cir. 2004) ..........................................................41

*Para–Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*
73 F.3d 1085 (Fed. Cir. 1995) ..........................................................50

*Perfect Web Techs., Inc., v. Infousa, Inc.*
587 F.3d 1324 (Fed. Cir. 2009) ..................................... 18, 25, 30, 33

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) ..................................... 14, 40, 41, 55

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*
711 F.3d 1348 (Fed. Cir. 2013) ........................................................50

*Smith & Nephew, Inc. v. Rea*
721 F.3d 1371 (Fed. Cir. 2013) .................................................. 17, 18

*Spectralytics, Inc. v. Cordis Corp.*
649 F.3d 1336 (Fed. Cir. 2001) ........................................................51

*United States v. Mead Corp.*
533 U.S. 218 (2001)...........................................................................54

*Wyers v. Master Lock Co.*
616 F.3d 1231 (Fed. Cir. 2010) .................................................. 18, 49

## Statutes

35 U.S.C. § 103 ................................................................................1

35 U.S.C. § 2 ...................................................................................56

35 U.S.C. § 282 ...............................................................................56

35 U.S.C. § 316(a) ........................................................... 53, 57, 60, 62

35 U.S.C. § 316(a)(4) .......................................................................56

35 U.S.C. § 316(a)(9) ................................................................. 14, 54

35 U.S.C. § 316(d)(1)(B) .................................................................54

35 U.S.C. § 316(e) ...........................................................................56

35 U.S.C. § 319 ...............................................................................62

## Rules

37 C.F.R. § 42.100(b) ............................................................. passim

37 C.F.R. § 42.100(c) .......................................................................62

37 C.F.R. § 42.23 .............................................................................57

37 C.F.R. § 42.53 .............................................................................34

37 C.F.R. § 42.62 .............................................................................60

37 C.F.R. § 42.64(c) ........................................................................60

## Other Authorities

77 Fed. Reg. 48,756 (Aug. 14, 2012) .............................................57

*Cisco Systems, Inc., v. AIP Aquicistion*
   Case No. IPR2014-00247, *LLC,* July 10, 2014 Order, Paper No. 20 ................56

*SAP America, Inc. v. Versata Development Group, Inc.*
   Case No. CBM2012-00001, June 11, 2013 Order, Paper No. 70 ......................55

*TRW Automotive US LLC v. Magna Electronics Inc.*
   Case No. IPR2014-00251, June 26, 2014 Order, Paper No. 14 .........................55

# TABLE OF ABBREVIATIONS

*Parties*

| | |
|---|---|
| Clearlamp | Clearlamp, LLC, Appellant |
| LKQ | LKQ Corporation, Appellee |
| USPTO | United States Patent and Trademark Office |
| Board | Patent Trial and Appeal Board |

*Terms*

| | |
|---|---|
| '364 Patent | U.S. Patent No. 7,297,364, the patent-at-issue on appeal (A46-52) |
| Kuta | U.S. Patent Publication No. 2005/0208210 to Kuta (A117-123) |
| Butt | U.S. Patent No. 6,106,648 to Butt (A124-132) |
| Eastwood | Eastwood ShopTalk Forum Posts (A133-147) |
| Cole | U.S. Patent No. 7,163,446 to Cole et al. (A1064-1072) |
| Trial | *Inter Partes* Review No. IPR2013-00020 |
| Petition | LKQ's Petition for *Inter Partes* Review, Paper No. 1 dated October 17, 2012 in IPR2013-00020 (A53-116) |
| Preliminary Response | Clearlamp's Preliminary Response, Paper No. 11 dated November 7, 2012 in IPR2013-00020 (A236-271) |
| Patent Owner Response | Clearlamp's Patent Owner Response, Paper No. 33 dated July 1, 2013 in IPR2013-00020 (A310-364) |
| Motion to Amend | Clearlamp's Motion to Amend Claims, Paper No. 38 dated July 1, 2013 in IPR2013-00020 (A700-716) |

| | |
|---|---|
| Reply | LKQ's Reply to Clearlamp's Patent Owner Response, Paper No. 50 dated September 30, 2013 in IPR2013-00020 (A758-776) |
| Motion to Exclude | LKQ's Motion to Exclude Evidence, Paper No. 58 dated November 19, 2013 in IPR 2013-00020 (A1073-1090) |
| Final Decision | Board's Final Written Decision, Paper No. 73 dated March 27, 2014 in IPR2013-00020 (A3-45) |
| Br. | Clearlamp's September 15, 2014 Opening Brief in Appeal No. 2014-1627 |

**Notes**

\* Pages of the Joint Appendix are cited herein by referring to "A_".

\*\*Unless otherwise indicated herein, all emphases have been added.

## <u>STATEMENT OF RELATED CASES</u>

This appeal arises from the March 27, 2014 Final Decision, Paper No. 73 in Case No. IPR2013-00020. The Final Decision found Claims 1-10, 13, and 14 of the '364 Patent invalid under 35 U.S.C. § 103. Clearlamp is asserting that certain LKQ headlamps infringe the claims of the '364 Patent. Except for fact discovery, the district court litigation is currently stayed pending resolution of this appeal.

## STATEMENT OF THE ISSUES

1.    Whether substantial evidence supports the Board's conclusion that the prior art of record discloses "spraying a replacement clear coating material over the lamp surface."

2.    Whether substantial evidence supports the Board's finding that the prior art of record discloses the "removing an original clear coat" limitation under both the Board's construction and Clearlamp's narrower proposed construction.

3.    Whether the Board was correct, as a matter of law, in concluding that the broadest reasonable interpretation of the "removing an original clear coat" limitation encompasses "fully" removing as well as removal of less than all of the clear coat finish.

4.    Whether the Board was correct, as a matter of law, in concluding that the broadest reasonable interpretation of the "statically neutralizing" limitation does not mandate importing a sequential restriction on when the statically neutralizing step must be performed.

5.    Whether the Board was correct that secondary considerations based on alleged copying are inadequate to establish nonobviousness as a matter of law.

6.    Whether substantial evidence supports the Board's finding that Clearlamp's purported evidence of secondary considerations based on alleged

copying does not overcome the strong prima facie case of obviousness established by the prior art of record.

7.     Whether the Board was correct, as a matter of law, to apply the "broadest reasonable interpretation" standard mandated by 37 C.F.R. § 42.100(b).

## STATEMENT OF THE FACTS

### I.    THE '364 PATENT

The '364 Patent "relates generally to the refurbishing of lamp surfaces." (A50 at 1:8-9).   Its "Description of the Related Art" discusses "U.S. patent application Ser. No. 10/804,435", referred to in this proceeding as "Kuta."  (A50 at 1:25-26; *see also* A117-123).   The '364 Patent concedes that Kuta "discloses a method for refurbishing a headlamp surface. This method includes multiple steps of grinding the headlamp surface in a constant movement and oscillating motion…"  (A50 at 1:26-30).   It also concedes that in Kuta, "there is a constant supply of water that is poured over the headlamp surface as the headlamp surface is being refurbished. The water is used to remove debris from the headlamp surface and to cool the headlamp surface as it is being sanded."  (A50 at 1:30-35).

The method of the '364 Patent, which allegedly constitutes an improvement to Kuta, "includes the steps of removing the lamp from the motor vehicle.  An original clear coat finish is removed from the surface of the lamp…The surface is then buffed and cleaned.  A replacement clear coat material is sprayed over the surface of the lamp.  The replacement clear coat material is then cured."  (A50 at 1:61-67).  The '364 Patent's "method begins at 18 with the removal of the lamp from the motor vehicle at 18."  (A50 at 2:40-41).  After a cleaning process, "[t]he

original clear coat surface 12 is then removed at 24." (A50-51 at 2:58-3:19). The

'364 Patent discusses static neutralization:

> To further clean the lamp surface 10, the lamp surface 10 is statically neutralized at 50. By neutralizing the lamp surface 10 to all static energy, particulate from the grinding and buffing steps may be more easily removed. A solvent is applied to the lamp surface 10 at 52 whereafter the lamp surface 52 is statically neutralized for a second time at 54.

(A51 at 3:64-4:3). The '364 Patent also involves applying a clear coat:

> [T]he inventive method 16 continues with the application of a replacement clear coat material over the lamp surface 10 at 56. The application of the replacement clear coat is applied using a spraying technology to evenly coat the lamp surface 10 with the replacement clear coat 58.

(A51 at 4:4-9). After application, the clear coat is cured. (*See* A51 at 4:10-23).

The only distinction between the independent claims and Kuta identified during prosecution was that Kuta allegedly did not disclose removing the lamp from the vehicle prior to refurbishing. (*See, e.g.*, A159-160; A63-65). The applicant never identified other differences. (A65).

## II.    THE AT-ISSUE CLAIMS

The Board invalidated Claims 1-10, 13, and 14, and those claims are at issue in this appeal. (Br. at 15). Claims 1 and 13 are independent. Claim 13 is illustrative as it is identical to or narrower than claim 1 in all respects:

> 13.   A method for refurbishing a lamp surface of a lamp having surface damage, the method comprising the steps of:
>
> removing the lamp from the motor vehicle;

***removing an original clear coat finish from the lamp surface of the lamp***;

evening the lamp surface;

grinding swirls and scratches out of the lamp surface;

buffing the lamp surface;

cleaning the lamp surface;

***statically neutralizing debris on the lamp surface to facilitate the removal of all of the debris on the lamp surface***;

***spraying*** a replacement clear coating material over the lamp surface; and

curing the replacement clear coat material.

(A52 at claim 13) (emphasis indicates at-issue limitations on appeal).[1]

## III.    THE BOARD'S LEGAL CONCLUSIONS

### A.    The Board's Claim Construction Conclusions

The Board construed three phrases in the Final Decision.    (A7-12).

Clearlamp appeals the Board's construction of two of those phrases:  "removing an

original clear coat finish from the lamp surface of the lamp" (the "removing an

original clear coat" limitation) (A8-10) and "statically neutralizing debris on the

---

[1]    Clearlamp has not challenged the Board's factual finding that the unemphasized limitations or the additional limitations of dependent claims 2-10 and 14, are present in the prior art.

lamp surface to facilitate the removal of all of the debris on the lamp surface" (the "statically neutralizing" limitation) (A11-12).[2]

### 1.    The "Removing An Original Clear Coat" Limitation

Clearlamp's construction of the "removing an original clear coat" limitation "requires that clear coat finish must be 'fully' removed." (A8). During the Trial, Clearlamp relied on a passage of the '364 Patent that mentions "fully" removing a clear coat from a lamp surface. (A8-9).

In concluding that the broadest reasonable interpretation of the "removing an original clear coat" limitation does not require full removal of the clear coat finish (A9), the Board was persuaded that portions of the '364 Patent specification used the word "fully" while the claims did not:

> Notably absent from the claims themselves is the use of the qualifier "fully" in connection with the noted "removing" step. Indeed, the portions of the specification on which Clearlamp relies in advocating for its desired claim construction do not define the term "removing" as meaning only "fully removing" to the exclusion of an act of removing that is something less than "fully."

(A9). The Board found that the specification taught partial removal because "that the clear coat finish is considered 'fully removed' when the halo effect only 'approaches' the edges of the lamp surface itself suggests that full removal of the

---

[2]    Clearlamp did not appeal the Board's construction of "evening the lamp surface" (A10), nor did it appeal the Board's finding that this limitation is disclosed in the prior art (A19-20).

clear coat finish is accomplished even if some residual remains at the outermost portions of the edges." (A9). Accordingly, the Board concluded that "the step of 'removing' the clear coat finish encompasses within its scope the removal of less than all portions of the clear coat finish." (A10).

### 2. The "Statically Neutralizing" Limitation

Clearlamp asserted that the "statically neutralizing" limitation "must be performed only after other steps of the claims have been performed, namely those directed to grinding and buffing of the lamp surface." (A11). "Clearlamp urges that such construction is dictated by 'logic' and is supported in the Specification of the '364 Patent." (A11).

Relying on this Court's guidance that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one," (*Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001)), the Board concluded that there is neither "explicit language" nor "a sufficient basis for concluding that such a step is limited intrinsically to performance at any particular time." (A11). It concluded that even if one embodiment involves statically neutralizing after grinding and buffing, "that does not preclude the performance of that step at other times in other embodiments." (A12). The Board concluded that this limitation covers "statically neutralizing at various times during the refurbishing process." (A12).

## B.     The Board's Other Legal Conclusions

The Board concluded that Clearlamp's secondary considerations evidence could not overcome the strong case of obviousness presented by LKQ as a matter of law because "each of the recited features of [Claims 1-10, 13, and 14] was well known in the art of vehicle lamp refurbishment, as evidenced by Kuta, Butt, and Eastwood." (A28).

The Board also concluded that Claims 1-10, 13, and 14 are obvious as a matter of law. (A31-32).

## IV.   THE BOARD'S FACTUAL FINDINGS

The Board instituted the Trial on the following grounds:  (1) Kuta in view of Butt and (2) Kuta in view of Eastwood.  (A7).  The Board found that the prior art combinations involved in the instituted grounds disclose each limitation of Claims 1-10, 13, and 14.  (A31-32).

The Board made factual findings that when applying Kuta's process to a lamp that has been removed from a motor vehicle as taught in Butt and/or Eastwood, the prior art discloses:  (1) "spraying a replacement clear coating material over the lamp surface" (the "spraying a replacement clear coating" limitation) (A21-23); (2) the "removing an original clear" limitation (A17-19); and (3) the "statically neutralizing" limitation (A23-25). Clearlamp does not appeal any of the Board's other factual determinations regarding the disclosure of the prior art.

### A.    The "Spraying A Replacement Clear Coating" Limitation

The Board analyzed the prior art and Clearlamp's experts' testimony, and found that the prior art discloses the "spraying a replacement clear coating" limitation. (A21-23). Kuta discloses "application of 'a transparent ultraviolet hardenable coating material' applied to the lens as a 'scratch resistant coating.'" (A21). The Board reasoned that "it is apparent from [the testimony of Clearlamp's experts] that spraying such a coating was a known approach in the art, albeit one with potential economic detriments when applied to lamps that remain on a vehicle." (A22). The Board found that when using the instituted prior art combinations, lamps are removed from vehicles before applying the clear coating of Kuta, so "the potential detriments associated with spraying the clear coat seemingly no longer would be of concern." (A22). The Board also relied on Eastwood as "establish[ing] that a person of ordinary skill in the art, in implementing teachings of removing a lamp onto Kuta's lens refurbishing process, would have known that a replacement clear coating may be applied by an act of spraying." (A23).

### B.    The "Removing An Original Clear Coat" Limitation

The Board found that the prior art discloses the "removing an original clear coat" limitation. (A17-19). According to Butt, lamps may be removed from vehicles before refurbishing because it is "more convenient." (A18; *see also* A130

10

at 2:57-60). Similarly, according to Eastwood, lamps can be removed from vehicles because removal can "alleviate the potential of damage to the vehicle during the refurbishing process." (A18; *see also* A138). Based on these teachings, the Board concluded that:

> A person of ordinary skill in the art reasonably would have inferred that, when a lens is removed from the vehicle, the refurbishing process is not inhibited in connection with access to the corners of the lens, and additional removal of the original clear coat finish may be attained to produce a lens that is appropriately clear.

(A18). The Board found that the cross-examination testimony of Clearlamp's expert, Dimitris Katsamberis, confirmed the Board's interpretation of the prior art combinations. (A18 (*citing* A803 at 102:4-15)). The Board also considered Mr. Katsamberis' declaration testimony and the declaration testimony of Clearlamp's other technical expert, A. Harvey Bell, in finding this limitation disclosed by the prior art. (A19).

## C.    The "Statically Neutralizing" Limitation

The Board found that the prior art discloses the "statically neutralizing" limitation. (A23-25). Clearlamp did not dispute that Kuta's disclosure of flushing with water is an example of "statically neutralizing debris so as to remove debris from the surface of Kuta's lens." (A23-24). The Board found that "[f]lushing the lens surface until the water 'turns clear' conveys that all of the debris on the surface, at that time, has been removed." (A22). Because the Board found that no

sequencing limitation should be imported, it found that Kuta's water flush discloses this limitation. (A24-25).

### D.    The Board's Other Factual Findings

Clearlamp argued for secondary considerations of non-obviousness based on copying and alleged commercial success. (A351-362).[3] The Board made the factual finding that Clearlamp's evidence was insufficient. (A28).

The Board made factual findings in denying Clearlamp's Motion to Amend Claims. (A32-41). Among these, it found that the "removing an original clear coat" limitation (A37) and the "statically neutralizing" limitation (A38-39), when construed as Clearlamp urges, are each disclosed by the prior art.[4]

---

[3]    Clearlamp did not appeal the Board's findings regarding commercial success. (*See* Br. at 53-58).

[4]    The amendments in Clearlamp's Motion to Amend mirror the claim constructions it advocates here (i.e., adding "fully" to the "removing an original clear coat" limitation and requiring the "statically neutralizing" limitation to occur after certain steps of Claim 13). (*See, e.g.*, A35, A40).

## SUMMARY OF THE ARGUMENT

The Board ruled that LKQ proved, by a preponderance of the evidence, that Claims 1-10, 13, and 14 of the '364 Patent are invalid as obvious. (A27). It found that when Kuta's headlamp refurbishing process is applied to a headlamp that has been removed from a vehicle as taught by Butt or Eastwood, each limitation of Claims 1-10, 13, and 14 is met. (A12-27). The Board concluded that Clearlamp did not present evidence of secondary considerations of nonobviousness sufficient to alter this finding. (A27-32).

To succeed on appeal, Clearlamp must show that certain of the Board's factual findings are not supported by substantial evidence. However, Clearlamp cannot overcome the deference given to these findings. The combinations as presented in the Petition and understood by the Board involve performing Kuta's refurbishing process on a lamp that has been removed from a vehicle. (*See, e.g.*, A16-17). Clearlamp's experts confirmed the Board's understanding that when the documentary prior art is viewed in this way, it discloses the "removing an original clear coat" limitation to those of skill in the art under either the Board's correct construction or Clearlamp's narrower proposal. Likewise, Clearlamp's experts confirmed the Board's correct finding that the documentary prior art conveys the "spraying a replacement clear coating" limitation to those having skill in the art.

Each of these findings is supported by substantial evidence; Clearlamp's brief here does not show otherwise.

The other hurdle Clearlamp needs to overcome to succeed on appeal requires Clearlamp to show that the Board's constructions were **unreasonable**. The challenged Board constructions are unquestionably broader than those proposed by Clearlamp. For those constructions to be legally erroneous under the "broadest reasonable interpretation" ("BRI") standard of 37 C.F.R. § 42.100(b), Clearlamp must show that the Board's constructions were **unreasonable**. It cannot do this. Before this Court, Clearlamp presents no new analysis, and certainly has not demonstrated that the Board's constructions were unreasonable. As described below, each Board construction encompasses embodiments disclosed in the '364 Patent that would be excluded by the narrow constructions Clearlamp proffers. The Board's constructions are not unreasonable, so the Board did not legally err.

Clearlamp argues that the Board erred by applying the BRI standard, despite that standard being clearly articulated by 37 C.F.R § 42.100(b). However, this standard is both appropriate in *inter partes* review given the statutorily mandated opportunity for amendment (*see* 35 U.S.C. § 316(a)(9)), and was crafted pursuant to the authority Congress vested in the USPTO. Regardless, Clearlamp cannot show why its constructions are correct under the standard enunciated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Clearlamp relies on extrinsic, self-

serving expert testimony, and asserts that because its constructions are narrow, they are correct under *Phillips*. It does not actually articulate any reasoning under the *Phillips* framework. It also does not make the exacting showings of a clear intent to limit the claims required to import limitations from the specifications under this Court's precedent. *See Hill-Rom Svcs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

Clearlamp's decision not to appeal the Board's denial of its Motion to Amend (A32-42) is also relevant, as Clearlamp sought to amend its claims by adding the limitations it says must be present under the broadest reasonable interpretation of the claims. In denying Clearlamp's Motion to Amend, the Board found that the prior art discloses the "removing an original clear coat" limitation even if amended to mirror Clearlamp's advocated construction. (A37). The Board also found that the prior art discloses the "statically neutralizing" limitation even if amended to include a sequencing requirement, as in Clearlamp's advocated construction. (A40). Since the Board's factual findings regarding the Motion to Amend are unchallenged, Clearlamp's claim construction positions do not distinguish its claims from the prior art.

Last, Clearlamp cannot show that the Board's findings and conclusions with regard to secondary considerations of nonobviousness should be disturbed. The Board determined that Claims 1-10, 13, and 14 are "no more than predictable use

of prior art elements according to their established functions," so "secondary considerations are inadequate to establish nonobviousness as a matter of law." (A28).  The Board did not legally err since it correctly found a strong *prima facie* case of obviousness.  With regard to its copying argument, Clearlamp regurgitates the very facts the Board relied on below, and continues to ignore the fact that the process Clearlamp is presently accusing of infringing was already in place at a company purchased by LKQ.  Substantial evidence therefore supports the Board's conclusion that LKQ did not copy, and that secondary considerations cannot rescue Claims 1-10, 13, or 14.  (A28-30).

This Court should therefore AFFIRM the Board's conclusion that Claims 1-10, 13, and 14 are unpatentable.

## STANDARDS OF REVIEW

This Court reviews Board factual findings for substantial evidence. *In re Gleave*, 560 F.3d 1331, 1335 (Fed. Cir. 2009); *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). This standard "requires a deferential approach to the Board's findings." *Smith & Nephew, Inc. v. Rea*, 721 F.3d 1371, 1380 (Fed. Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d at 1312. It is "something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citing *In re Gartside*, 203 F.3d at 1312; *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229-30 (1938)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

This Court has stated that "[w]e review the Board's ultimate determination of obviousness de novo. ***However, we review the Board's underlying factual findings for substantial evidence***." *In re Kotzab*, 217 F.3d at 1369. This Court has also held that "while an analysis of obviousness always depends on evidence that supports the required *Graham* factual findings, it also may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do

not necessarily require explication in any reference or expert opinion." *Perfect Web Techs., Inc., v. Infousa, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

The Board's analysis of the impact of evidence of secondary considerations is a factual inquiry reviewed for substantial evidence. *In re Applied Materials, Inc.*, 692 F.3d at 1299-1300. However, "where the inventions represented no more than 'predictable use of prior art elements according to their established functions,' the secondary considerations are inadequate to establish nonobviousness as a matter of law.'" *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)). Accordingly, "[t]he presence of certain secondary considerations of nonobviousness are insufficient as a matter of law" to overcome a conclusion that the evidence only supports a finding that claims of an issued patent are obvious. *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1371 (Fed. Cir. 2006).

Clearlamp relies on *Smith & Nephew*, where this Court overturned a Board ruling that claims were patentable because the Board's ruling was "mainly the result of analytical errors…not the Board's resolution of factual questions." 721 F.3d at 1380. Clearlamp alleges no such analytical errors; the factual issues disputed by Clearlamp are merely disagreements with the Board's weighing of the evidence. *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino* is

18

similarly inapplicable, as Clearlamp does not argue the Board's factual determinations are inconsistent with the prior art, or that the art counsels against the instituted combinations. 738 F.3d 1337, 1345-46. (Fed. Cir. 2013).[5]

Clearlamp relies on *Brand v. Miller* in for the proposition that "it is impermissible for the Board to base its factual findings on its expertise, rather than on the evidence in the record.…" 487 F.3d 862, 869 (Fed. Cir. 2007). Clearlamp's usage of ellipses does not fairly represent the *Brand* Court's reasoning:

> [I]t is impermissible for the Board to base its factual findings on its expertise, rather than on evidence in the record, ***although the Board's expertise appropriately plays a role in interpreting record evidence***.

*Id*. Clearlamp's conclusion that *Brand* requires reversal as a matter of law is also an oversimplification. In *Brand*, the Court held that without the Board's substitution of expertise, the record did not provide substantial evidence to affirm. *Id*. at 870-71. *Per se* reversal of a matter of law is, however, improper; per *Brand*, Clearlamp still needs to show that the Board's findings were not supported by substantial evidence. *Id*. at 871.

---

[5]     Clearlamp did not even appeal the Board's finding that the instituted combinations were proper. (A15-17; A321-322; A342-344).

## ARGUMENT

**I.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE PRIOR ART DISCLOSES THE "SPRAYING A REPLACEMENT CLEAR COATING" LIMITATION**

Claims 1 and 13 of the '364 Patent each contains the "spraying a replacement clear coating" limitation.  (A51-52 at claims 1, 13).  The parties did not dispute the construction of this term; the only issue for the Board was whether the instituted combinations disclose this limitation.  The Board considered the evidence presented by LKQ and Clearlamp and determined that the prior art discloses this limitation to one of skill in the art.  (A21-23).

Clearlamp's statement of the standard of review for this issue is muddled.  (Br. at 49-53).  It asserts that the Board "legally erred" (Br. at 49) but also that the Board's determination was "clearly erroneous" (Br. at 50).[6]  This issue is factual, and the Board's findings are supported by substantial evidence.  *In re Gartside*, 203 F.3d at 1316.  Moreover, the Board did not legally err in its handling of the record with regard to "spraying."

---

[6]    Clearlamp's reference to the "clearly erroneous" standard is at odds with *Dickinson v. Zurko*, where the Supreme Court clarified that the appropriate standard of review for factual findings by the USPTO, an administrative agency, is whether the findings are supported by "substantial evidence," and expressly rejected the "clearly erroneous" standard.  527 US 150, 152-53 (1999).

**A.    Substantial evidence supports the Board's finding that the prior art discloses the "spraying an original clear coat" limitation.**

The Petition identified paragraphs 23 and 26 of Kuta as disclosing the claimed "spraying."  (A21 (*citing* A78, A85)).  These paragraphs state that the "exterior surface 12 *is coated* with a transparent ultraviolet hardenable coating material," (A122, ¶23) and that "a scratch resistant coating *is applied*" (A122, ¶26).  The Board found that these paragraphs were part of the basis for why Petitioner was reasonably likely to prevail, and instituted the Trial.  (A293, 294).[7]

Clearlamp challenged the sufficiency of the spraying disclosure of the Kuta/Butt and Kuta/Eastwood for the first time in its Patent Owner Response.  (A341).  LKQ's Reply explained that a person of skill in the art would understand that the coating/application techniques disclosed by Kuta include spraying.  (A765).  LKQ stated that "Kuta teaches (and PO's experts confirmed) that one of skill would have known to use sprayable clear coats…to apply a hard clear coat to a lamp."  (A765-766).  LKQ cited to the testimony of Clearlamp's expert, who confirmed that spraying was one known prior art technique for applying a clear coating to a surface.  (A785 at 31:10-19).  This evidence shows that a person of ordinary skill in the art (including Clearlamp's own expert) understands that Kuta's

---

[7]    Clearlamp's Preliminary Response did not challenge the contention that "Kuta accounts for all of the features required by claims 1-24 with the exception of the step in claims 1 and 13 of 'removing the lamp from a motor vehicle.'"  (A289).

use of "coating" and "applying" can encompass several techniques, including spraying.

Considering the totality of the evidence, the Board agreed with LKQ and found that Kuta's disclosure regarding coating/applying a clear coat discloses spraying, as "spraying such a coating was a known approach in the art…" (A22). It also found that Eastwood discloses spraying a clear coat, confirming the Board's interpretation of Kuta. (A22-23). The Board concluded that "[t]he record thus establishes that a person of ordinary skill in the art, in implementing teachings of removing a lamp onto Kuta's lens refurbishing process, would have known that a replacement coating may be applied via an act of spraying." (A23).

Clearlamp's critique of the Final Decision relies on its characterization of the disclosure of Kuta *on its own* and ignores the instituted combinations. Clearlamp argues that one of skill in the art would have understood that a clear coat would not have been sprayed onto an *in situ* lamp. (Br. at 50 (citing A424-425 at ¶37-39)). The Board rightly noted that this argument fails to appreciate that the instituted grounds involve removing a lamp from a vehicle (as taught by Butt or Eastwood) and thereafter applying the Kuta process *to the removed lamp*. (A22). Viewed in this light, Clearlamp's *in situ* argument is baseless because "the potential detriments associated with spraying the clear coat seemingly no longer would be of concern." (A22).

Clearlamp also argues that Kuta cannot disclose spraying because it is not directed to a process to "arrive at an original-equipment quality lamp." (Br. at 50). The claims do not require "arriv[ing] at an original-equipment quality lamp."[8] Clearlamp's argument about "dirt particles" and "coating flow defects" can be disregarded for the same reason. (Br. at 50).

The Board's finding that the prior art combinations of record disclose the "spraying a replacement clear coat" limitation is thus supported by substantial evidence.

### B.    Clearlamp's "spraying" arguments misrepresent the record.

Clearlamp states that "the Kuta reference teaches that the coating disclosed therein is brushed or wiped onto the lamp surface." (Br. at 50). This misrepresents Kuta; Kuta teaches *coating* a lamp surface with a clear coat material and *applying* a clear coat material to a lamp surface. (A122 at ¶23, 26). Clearlamp's expert introduced the concepts of wiping and brushing when he testified that he was not familiar with the particular commercial clear coat disclosed in Kuta (A424 at ¶37), but *guessed* that product "would be brushed or wiped onto the lamp" (A425 at ¶39). Clearlamp's expert concluded this because "the Kuta process is directed to a refinishing process in which the lamp remains on the vehicle while it is being

---

[8]    Clearlamp tried, and failed, to add this limitation in its Motion to Amend. (A38-39).

refinished." (A425 at ¶38). Nonetheless, he confirmed that spraying is and was one of many known ways to apply clear coats to headlamps. (A785 at 31:10-19).

Clearlamp also states that "Clearlamp's experts' testimony [] established that Kuta did not disclose spraying." This conclusion was premised on Clearlamp's argument that because Kuta discloses an *in situ* process, Kuta cannot disclose spraying. (A425 at ¶38; *see also* A341). The Board specifically recognized that:

> [T]he grounds of unpatentability proposed by LKQ and at issue in this trial are not premised on Kuta taken alone. Instead, the grounds are based on Kuta taken with either Butt or Eastwood. As discussed above, each of Butt and Eastwood conveys that when refurbishing the lamps of a vehicle, it was known in the art that the lamps may be either removed from or maintained on a vehicle. ***When so removed, the potential detriments associated with spraying the clear coat seemingly no longer would be of concern.***

(A22). The Board was thus correct to disregard Clearlamp's experts' testimony regarding *in situ* refurbishing. (A22).

Clearlamp also disputes the Board's interpretation of Eastwood. (Br. at 51-52). However, Clearlamp does not dispute the Board's recognition that Eastwood uses the word "spray" when describing applying a clear coat. (A22-23).

Clearlamp's argument that the Board substituted "general knowledge" for prior art disclosure is incorrect. (Br. at 52). The Board found that Eastwood confirms that "spraying is a known option for applying a clear coat." (A22). The Board did not use "general knowledge" to replace documentary evidence for core factual findings; it merely noted the non-controversial point that the verb in the

claims of the '364 Patent is used by Eastwood to describe how to apply a clear coating. (A22-23). This is nothing more than the permissible "recourse to logic, judgment, and common sense available to the person of ordinary skill" this Court specifically permits as part of the "analysis of obviousness." *Perfect Web Techs., Inc.*, 587 F.3d at 1329.

### C.    The Board did not legally err.

The only basis for Clearlamp's statement that the Board *legally* erred appears to be Clearlamp's assertion that "the Board relies upon argument and evidence that was not presented in the Petition…" (Br. at 50-51). As described below, the Board is entitled to rely on evidence submitted in a proper Reply to arrive at its Final Decision; otherwise, the opportunity for cross-examination of witnesses, reply briefs, and hearings in *inter partes* review proceedings would be unnecessary. (*See infra* at V.B).

Clearlamp argues that the Board shifted the burden to its experts to show that spraying was not known. (Br. at 51). This is incorrect. The Petition asserted, Clearlamp's Preliminary Response did not dispute, and the Board agreed, that the instituted grounds disclose "spraying" to those of skill in the art. (A78; A85; A289). Clearlamp tried to refute this *prima facie* case of obviousness for the first time in its Patent Owner Response. (A341-342). Clearlamp's argument assumed the lamp of Kuta remains *in situ*, but as described above, the Board correctly

realized that when the lamp is removed as in the instituted combinations, the economic disadvantages at the cornerstone of Clearlamp's expert declarations crumble. (A22). Far from shifting the burden, the Board found that Clearlamp's experts were unable to rebut the Petition's correct assertion (and the Board's eventual factual finding) that the prior art discloses applying a clear coat material by spraying to one of skill in the art. Instead, the Board found Clearlamp's experts *supporting* this interpretation during cross-examination.

## II. THIS COURT SHOULD AFFIRM THE BOARD'S FINDING THAT THE PRIOR ART OF RECORD DISCLOSES THE "REMOVING AN ORIGINAL CLEAR COAT" LIMITATION

Claims 1 and 13 each recite "removing an original clear coat finish from the lamp surface of the lamp." (A51-52 at claims 1, 13). Removing an original finish or coating is a basic concept that is well known in the repair or refurbishment industry. For example, Kuta uses nearly identical language to that recited in Claims 1 and 13 in its disclosure of this concept: "As the exterior surface 12, primarily *factory installed hard coating materials*, of the lens 10 *is removed* it exposes a non-abraded surface below, which now becomes the exterior surface 12." (A122 at ¶23).

Despite the usage of language nearly identical to the claim language in the prior art Kuta reference, Clearlamp spends a substantial portion of its brief arguing this limitation. (Br. at 17-42). Clearlamp's argument can be distilled to two

fundamental questions:  (1) does substantial evidence support the Board's finding that applying Kuta's process to a headlamp that has been removed from a vehicle results in fully removing the clear coat finish on that headlamp (*see* Br. at 34-42) and (2) was the Board correct, as a matter of law, in declining Clearlamp's invitation to import the word "fully" from the specification into the claims (*see* Br. at 17-34).  If the answer to either inquiry is in the affirmative, this Court should affirm the Board's conclusion with regard to the "removing an original clear coat" limitation.

The fact that the Board analyzed this limitation under Clearlamp's proposed construction simplifies this Court's task:  even if this Court agrees with Clearlamp that the "removing an original clear coat" limitation can only be satisfied when the clear coat is *fully* removed such that *all* the clear coat is taken off the lamp, the Final Decision demonstrates that substantial evidence supports the Board's conclusion that the prior art combinations of record disclose such full removal. (A17-19).

If this Court agrees with the Board's claim construction analysis, its task is equally easy.  Clearlamp presented no argument that the prior art fails to disclose the "removing an original clear coat" limitation under the Board's construction.  It admits that "there is no dispute…that Kuta teaches that the original clear coat layer is [] partially removed."  (Br. at 35 (citing A379-387 at ¶¶38-56)).  If this Court

affirms the Board's claim construction, this Court must affirm the Board's finding that the prior art discloses the "removing an original clear coat" limitation.

### A. Substantial evidence supports the Board's finding that the "removing an original clear coat" limitation is disclosed even under Clearlamp's narrow construction.

Clearlamp declines to articulate a standard of review of the Board's decision on this issue.  Determining whether the prior art discloses "fully removing an original clear coat finish" (*i.e.*, Clearlamp's narrowed version of this term) is a question of fact.  This Court reviews the Board's findings for substantial evidence. *In re Gartside*, 203 F.3d at 1316.

### 1. Substantial documentary and testimonial evidence supports the Board's finding.

The Board noted that with regard to obviousness, "it is not necessary to find precise teachings in the prior art directed to the specific subject matter claimed because inferences and creative steps that a person of ordinary skill in the art would employ can be taken into account.  (A17 (citing *KSR Int'l Co.*, 550 U.S. at 418)).  The only reason some clear coat may not be removed in Kuta alone is "attributed to difficulty in reaching the corners of a lens or lamp when it remains affixed to a vehicle."  (A17-18 (citing A122 at ¶25)).  The Board, however, understood "the grounds of unpatentability are premised on Kuta's disclosure when taken with either Butt or Eastwood."  (A18).  In analyzing the combinations actually at issue, the Board (unlike Clearlamp) gave proper credence to the

disclosures of Butt and Eastwood cited in LKQ's Petition, (*see e.g.* A73 (citing A130 at 2:57-60); A74 (citing A138)).  The Board also found Kuta's teaching of removing the clear coat finish to a point where the lens is "satisfactory and quite clear" to be indicative of a desire to remove as much clear coat as possible.  (A18 (citing A122 at ¶23)).  Based on its analysis of the record evidence, the Board made the factual finding that:

> A person of ordinary skill in the art reasonably would have inferred that, when a lens is removed from the vehicle, the refurbishing process is not inhibited in connection with access to the corners of the lens, and additional removal of the original clear coat finish may be attained to produce a lens that is appropriately clear.

(A18).

The Board also relied on Clearlamp's experts to confirm its analysis of the evidence identified in and submitted with the Petition.  Specifically, the Board found the following testimony from Mr. Katsamberis to be further probative:

> Q.    Let's assume for a second that the system of Kuta was used to refinish a lamp that had been removed from a car; okay?  Can you assume that?
>
> A.    Yes.
>
> Q.    Would the limited access corners which are labeled as Number 14 in Kuta still exist if that was the case?
>
> A.    Probably not.
>
> Q.    Why not?
>
> A.    Because the car body will not be there to limit your access to the corners.

(A803 at 102:4-15).   The Board found this testimony "consistent with" its conclusion regarding the disclosure of the prior art.  (A18).

The Board considered the declaration testimony of Messrs. Katsamberis and Bell, but concluded that they "neglect[ed] to consider appropriately what a person of ordinary skill in the art would have taken from the ***combined teachings*** of Kuta and either Butt or Eastwood."  (A19).  This is unsurprising.  Clearlamp asserts that Mr. Bell's testimony "explained in great detail ***the process of Kuta***," but does not address the combinations of references actually used to institute Trial.  (Br. at 35).  Clearlamp also argues that "Petitioner failed to provide any evidence that ***Kuta*** discloses the properly construed Removing an Original Clear Coat Limitation."  (Br. at 35).  Unlike Clearlamp, the Board correctly acknowledged the fundamental point that the Trial was instituted based on Kuta combined with Butt and Kuta combined with Eastwood.  (A18-19).

Finally, this Court permits the Final Decision to be reflective of some amount of interpretation of the prior art, including "recourse to logic, judgment, and common sense" not explicitly stated in the prior art references themselves. *Perfect Web Techs., Inc.*, 587 F.3d at 1329.  LKQ submits that the Board did not need to engage in any amount of interpretation; in any event, the Board certainly did not use "basic knowledge" to replace core factual findings, as Clearlamp suggests.  (Br. at 37).

Clearlamp makes three arguments to try to undermine the Board's analysis. None disturbs the substantial evidence supporting the Board's conclusion.

(1)    The Board's analysis is based on documentary evidence presented in the Petition.

First, Clearlamp argues that the Board's conclusion does not rely on documentary evidence presented in the Petition.  (Br. at 37-40).  It separately complains that the Petition does not provide evidence of the "removing an original clear coat" limitation because it contains citations only to Kuta for the "removing an original clear coat" limitation.  (Br. at 34-36).

It is true that the claim chart entry for the "removing an original clear coat" limitation cites only to the portions of Kuta that contain nearly identical language to this claim limitation; it is not true that the Petition (or the Final Decision) relies only on Kuta in explaining why the claims of the '364 Patent are invalid.

With regard to the "removing the lamp from the motor vehicle" limitation of claims 1 and 13, the Petition states that "Kuta does not disclose removing a lamp from a motor vehicle.  However, removing lamps from motor vehicles *to refurbish or otherwise refinish* was well known in the art, and thus would have been obvious to a person of ordinary skill in the art."  (A73, A82).  That is, the Petition asserts that it would have been obvious to apply Kuta's refurbishing process to a lamp that has been removed from a motor vehicle.  The Petition also cites Butt's statement that "it is generally more convenient to remove the lamp or lighting unit from the

31

vehicle…"  (A73, A82-83 (citing A130 at 2:57-60)).  "Moreover, the disclosure in the background of Kuta…indicates that Kuta contemplated processing vehicle lamps that were not installed in vehicles," such as is taught in Butt.  (A74).  It states that "Eastwood teaches removing a lamp from a motor vehicle to refurbish the lamp," and cites to Eastwood's disclosure that a user "took the headlights out of [his] Mustang to do them, because [he] didn't want to risk any damage to the car."  (A74, A83 (citing A138)).  The Petition further asserts that a person of ordinary skill would have been motivated to combine Eastwood with Kuta at least because both references deal with repairing or refurbishing vehicle lamps, and because Kuta contemplated processing vehicle lamps that were not installed in vehicles.  (A74-75).  In sum, the Petition's discussion of the "removing the lamp from the motor vehicle" limitation makes clear that the instituted grounds involved applying Kuta's process to a lamp removed from a motor vehicle, per the teachings of Butt or Eastwood.

Clearlamp's discussion of Kuta's limited access corners is irrelevant.  (Br. at 35).  Clearlamp attempts to mislead this Court by repeatedly arguing what individual references disclose despite the fact that the instituted grounds each involve obviousness combinations.  Kuta is not being applied alone.  The Board recognized this:  "that some amount of clear coat finish may remain after Kuta's sanding steps is attributed to difficulty in reaching the corners of a lens or lamp

when it remains affixed to a vehicle…However, the grounds of unpatentability are premised on Kuta's disclosure ***when taken with either Butt or Eastwood***." (A17-18).

Contrary to Clearlamp's assertion (Br. at 37-40), the Board relied on the teachings of Kuta to conclude that applying the Kuta sanding process to a lamp that has been removed from a vehicle would fully remove the clear coat. Specifically, the Board relied on Kuta's disclosure that the sanding process continues until "the lens surface 'appears clear'", is "satisfactory and quite clear," and until "clarity is restored to the lens." (A17 (citing A122 at ¶23, 25); *see also* A78). The Board then applied the specific teachings of Kuta to a situation where, as reflected in the instituted combination, the lamp had been removed. (A18). The Board found that when the lamp is removed prior to refurbishing, Kuta's teaching of sanding until the lens surface is quite clear results in the full removal of the clear coat finish. (A18). The Board did not use "basic knowledge" or "common sense" as a ***replacement*** for documentary evidence. (Br. at 37). Instead, the Board permissibly used logic, judgment, and common sense, as well as an understanding of the instituted combination, to complement and interpret the disclosures of the three involved references. *Perfect Web Techs., Inc.*, 587 F.3d at 1329.

Clearlamp also argues that the Reply brief (A763-764) contains improper new argument. Clearlamp does not assert that the Reply brief is not responsive to

33

its Patent Owner Response.  The argument contained in the Reply brief was properly in response to the Patent Owner Response, and was correctly considered by the Board in making its final decision.  (*See infra* at V.B).  Moreover, the argument in the Reply brief was nothing more than a restatement of the theory articulated in the Petition and reflected in the decision to institute the Trial.

> (2)    The Board properly used the trial testimony from Clearlamp's expert to confirm its analysis of the prior art.

Clearlamp argues that the Board improperly relied on Clearlamp's expert witness testimony.  (Br. at 40-41).  As discussed above, the Board found that the prior art itself discloses fully removing to one of skill in the art, and corroborated its reasoning by relying on Mr. Katsamberis' cross-examination testimony, which is ***trial testimony*** presented in the Trial.  (A17-19).  Use of the testimony in this way is proper.  The rules do not contemplate a situation where an expert's trial testimony (in declaration form or in cross-examination form) cannot be used in issuing a final decision.  (*See infra* at V.B).  If cross-examination plays no role in the Trial, experts would not be held accountable for the substance of their declarations, and rules authorizing the deposition of declarants (*see, e.g.*, 37 C.F.R. § 42.53) would be surplusage.  Moreover, the Board considered Clearlamp's experts' declarations, and concluded that they "neglect[] to consider appropriately what a person of ordinary skill in the art would have taken from the combined teachings" and instead focused on Kuta alone.  (A19).

Lastly, Clearlamp makes a convoluted "double obviousness" argument, asserting that the question Mr. Katsamberis was asked "assumes the invention." (Br. at 41). Clearlamp's admissions in this proceeding (including its decision not to appeal the propriety of the Board's combination of references) confirm that is not the case. (A15-17; A321-322; A342-344). Mr. Katsamberis was not asked to assume the invention, rather he was asked to assume that Kuta's refurbishing process is performed on a lamp that has been removed from a vehicle. (A803 at 102:4-15). Mr. Katsamberis understood the question and answered truthfully. (A803 at 102:4-15). Clearlamp's argument here is nothing more than a continuation of its refusal to consider the instituted combinations, and instead to cling to the teaching of Kuta alone. When Clearlamp's expert was forced to actually address the instituted combination, he came to the same conclusion as the Board. (A18-19).

> (3)    Clearlamp's inability to rebut LKQ's evidence does not
> mean the Board shifted the burden to Clearlamp.

Clearlamp asserts that the Board improperly shifted the burden of proof to Clearlamp. (Br. at 42). Clearlamp is incorrect. The Board found that the Petition had presented a combination of prior art references that discloses the "removing" limitation even under Clearlamp's narrowing limitation. (A17-18). The Board looked to Clearlamp's evidence to see whether anything presented by Clearlamp undermined that conclusion. (A18). Instead of finding evidence contrary to that

presented in the Petition, the Board actually found Clearlamp's expert *supporting*

the proposition set forth in the Petition.  (A18 ("that inference is consistent with the

deposition of Clearlamp's own expert witness, Mr. Katsamberis.")).  Not only did

the Board not shift the burden of proof to Clearlamp, but it expressly looked to

Clearlamp's experts to explain why LKQ's argument was incorrect; it found

affirmation, not negation, of LKQ's position.

For all these reasons, substantial evidence supports the Board's conclusion

that the prior art of record discloses the "removing an original clear coat"

limitation under Clearlamp's narrow construction.  This Court should affirm the

Board and decline to address Clearlamp's claim construction arguments for this

limitation.

### B.    The Board's construction of the "removing an original clear coat" limitation is correct as a matter of law.

Clearlamp posits that the application of the "broadest reasonable

construction" standard mandated by 37 C.F.R. § 42.100(b) was legal error.  (Br. at

17-24).  As discussed below, the Board did not err in applying this standard.  (*See*

*infra* at V.A).

Because the prior art Kuta reference uses nearly identical language to that used in the '364 Patent claims[9], Clearlamp must argue that the Board erred in construing "removing" as encompassing both partially and fully removing. (Br. at 24-34). Clearlamp's construction, which would limit the claims to cover only removing *all* of the clear coat finish, is indisputably narrower than the Board's construction. The only way for Clearlamp to show that the Board's construction was in error is to show that the Board's construction was unreasonable. This determination is factual, and should be reviewed for substantial evidence. The Board's construction is reasonable at least because the specification mentions "fully removing," while the claims omit the word "fully." This also constitutes substantial evidence in support of the Board's construction.

### 1.    The Board correctly construed this limitation.

The Board concluded that is no reason to importing the word "fully" (and the corresponding concept of removal of *all* of the clear coat finish) into the "removing an original clear coat" limitation. (A8-10). In part, the Board relied on the use of the word "fully" to modify "removing" in the specification, but noted the

---

[9]    Kuta discloses "the exterior surface 12, primarily *factory installed hard coating materials*…is *removed*…" (A122 at ¶23); the '364 Patent claims require "*removing* an *original clear coat finish*…" (A51-52 at Claims 1, 13).

omission of the word "fully" from the claims.  (A9; A51 at 3:6-11).[10]

The Board also relied on the discussion of a "halo effect" caused when sanding a clear coat finish.  (A9).  Clearlamp asserts that "[t]he Board came to its conclusion by equating the location of a 'halo effect' on the lamp with the removal of the clear coating.…"  (Br. at 31).  This is not true.  The specification states that "a halo effect will be created differentiated [sic] between the different thicknesses of the original clear coat finish 12 as it is being ground off the lamp surface 10."  (A51 at 3:7-10).  It also confirms that the original clear coat finish "is fully removed from the lamp surface 10 when the halo effect ***approaches the edges of the lamp surface***."  (A51 at 3:11-13).  The Board retained its adjudicative function in concluding that the discussion of the "halo effect" indicates that some embodiments disclose partially removing the clear coat finish.  (A9).  It also found that "full removal of the clear coat finish is accomplished even if some residual remains at the outermost portions of the edges."  (A9).  Thus, thus narrowing the claims as Clearlamp proposes is not reflective of the broadest reasonable interpretation, as it excludes some embodiments.

---

[10]    Clearlamp suggests that the more appropriate observation is that the modifier "partially" is not used in the specification or the claims.  (Br. at 29). However, Clearlamp provides no reason why the failure to use the word "partially" is more persuasive than the actual use of the word "fully" in the specification, coupled with the omission of the word "fully" in the claims.

The '364 Patent also states that "additional work in localized areas may be needed to **more fully remove** the scratch from the lamp surface 10." (A51 at 3:13-15). This emphasizes that the patent drafters did not intend "removing" to be a binary activity; even "fully removing" is not a binary activity. The Board's conclusion that the use of "fully" to modify removing in the specification coupled with the omission of the modifier "fully" in the claims indicates an intentionally broader claim scope (A9) is thus reasonable.

Finally, the claims of the '364 Patent suggest that fully removing is not necessary. Each claim is directed to a method for refurbishing **a lamp surface having surface damage**, and requires removing an original clear coat finish from the **lamp surface of the lamp**. (A51-52 at claims 1, 13). The antecedent basis for "lamp surface of the lamp" (the portion of the lamp from which the clear coat must be removed) is the **lamp having surface damage**. Accordingly, the plain claim language suggests that interpreting the claims to be satisfied by removing less than all of the clear coat finish is a reasonable claim interpretation.

There is simply no basis to find that Clearlamp's assertion that "removing means removing" such that "all the original clear coat is taken off the lamp" reflects the broadest reasonable construction. (Br. at 34). The Board did not engage in "efforts to render the challenged claims unpatentable" (Br. at 31), and did not err in construing the claims. The '364 Patent itself undermines

Clearlamp's proposal and supports the Board's construction. (A9-10).

### 2. Clearlamp failed to make the requisite showing to import a limitation into the claims.

Under the claim construction framework of *Phillips* that Clearlamp asserts should apply (*see* Br. at 19-24), this Court has advised that "[i]t is a bedrock principle of patent law that the claims of a patent define the invention" and that "[t]he written description part of the specification itself does not delimit the right to exclude." *Phillips*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotations omitted). "[T]he words of the claim are generally given their ordinary and customary meaning." *Id.* at 1313 (quotations omitted). This reflects a "heavy presumption" that claim terms are not limited to specific embodiments disclosed in the specification. *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). "[A]lthough the specification often describes very specific embodiments of the invention," this Court has "repeatedly warned against confining the claims to those embodiments." *Id.* There are two scenarios where limiting a claim term to the preferred embodiment may be appropriate: (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of the claim term either in the specification or during prosecution. *Hill-Rom Svcs., Inc.*, 755 F.3d at 1371. The standard for either exception to apply is "exacting" (*Id.* at 1371) and requires "a clear intention to limit the claim scope using words or expressions of manifest exclusion or

restriction" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

Clearlamp has not made the exacting showing of a clear intention to limit the claim scope under the narrower *Phillips* framework or under the broadest reasonable construction framework of 37 C.F.R. § 42.100(b). (*See, e.g.*, A289). At most, its arguments amount to the legally incorrect reasoning that because the specification allegedly only describes "fully removing," the claims should likewise be limited.[11]

Clearlamp makes a number of unpersuasive arguments in an attempt to justify importing "fully" into the claims of the '364 Patent, but none of these arguments evidences that the Board's construction is in error. First, Clearlamp argues that the idea of restoring headlamps to their "original equipment condition" mandates importing the word "fully" into the claims. (Br. at 24-25). This phrase is not in the claims, and Clearlamp has jettisoned its Motion to Amend, where it attempted to amend the claims to include that quality standard. (*See, e.g.*, A35). Mr. Katsamberis' testimony can also be disregarded because his opinion is premised on the assumption that the claims require refurbishing a headlamp to "original equipment condition." (Br. at 25). Mr. Katsamberis' opinion that

---

[11]    Indeed, the Board found the specification is not limited to "fully removing" as Clearlamp interprets that term. (A9-10).

"nothing in the '364 patent suggests that less than all the clear coating can be removed…" (Br. at 25 (citing A420-421 at ¶27)) is both incorrect and does not reflect the standard for importing limitations into a claim. *See Hill-Rom Svcs., Inc.*, 755 F.3d at 1371. Clearlamp's argument about "taking the lamp all the way off' (Br. at 26) was first presented at the oral hearing (A1023) and is nothing more than unsupported attorney argument considered and ignored by the Board. The Board properly focused instead on the language of the specification relating to the "removing an original clear coat finish" limitation.

Clearlamp also argues for the first time that removing the clear coat finish is not an ongoing process. (Br. at 29). However, the '364 Patent details a progression of sandpaper that can remove the clear coat. (A50-51 at 2:61-3:1). It also discusses the expansion of a "halo effect" that "approaches the edges of the lamp surface 10." (A51 at 3:6-10).

While Clearlamp argues the Board was incorrect because "the minutest removal of the original clear coating meets the subject limitation," (Br. at 29-30), it does not explain why localized removal of clear coat for localized refurbishment cannot be covered. Clearlamp's failure to claim *fully* removing the clear coat finish is consistent with its failure to claim a desired quality standard; both suggest that such localized refurbishment should properly be covered.

Finally, the Board did not make "new arguments" in support of its

construction.   Clearlamp failed to raise any claim construction disputes in its Preliminary Response, so the first opportunity the Board had to consider Clearlamp's arguments was in its Final Decision.   It was within the Board's purview to consider the evidence presented, including the specification of the '364 Patent, in arriving at its conclusion.

## III.   THE BOARD CORRECTLY CONCLUDED THAT THE PRIOR ART OF RECORD DISCLOSES THE "STATICALLY NEUTRALIZING" LIMITATION OF CLAIM 13

Claim 13 is the only independent claim that contains the "statically neutralizing" limitation.  (A52 at claim 13).  The issue for this Court with regard to this limitation involves the *timing* of static neutralization, not *whether* the prior art discloses acts of static neutralization.

The Board noted that "Clearlamp does not contend that the water flushing procedure in Kuta fails to constitute an act of statically neutralizing debris so as to remove debris from the surface of Kuta's lens."  (A23 (citing A803 at pp. 103-104, A839 at pp. 48-49); *see also* A24).  The Board summarized Clearlamp's position:

> In arguing that Kuta does not meet the step of "statically neutralizing debris on the lamp surface to facilitate removal of all of the debris on the lamp surface," Clearlamp relies on its construction of the pertinent step in requiring a particular sequence of the application of 'statically neutralizing' techniques as occurring only after all steps of grinding and buffing have been completed.

(A24).  Clearlamp argues that "the only reasonable construction of this limitation requires that it takes place after the preceding steps in the claimed method that

create debris have been completed," and thus argues that the Board erred because its construction covers performing static neutralization at various points in the claimed process. (Br. at 43). Clearlamp cannot identify any persuasive reason to import a limitation into claim 13. (*See* A289 (the inventors did not act as their own lexicographer, and the presumption that the ordinary and accustomed meaning should be applied has not been overcome)).

Clearlamp's construction is indisputably narrower than the Board's construction. The only way for Clearlamp to show that the Board's construction was in error is to show that the Board's construction was unreasonable. This determination is a factual one that should be reviewed for substantial evidence. The Board's construction is reasonable at least because the specification discloses performing *two different* static neutralization steps (A51 at 3:64-4:3) and because Clearlamp's expert testified that "static neutralization **could certainly be performed at other points in the process**." (A378 at ¶37). This evidence constitutes substantial evidence in support of the Board's construction.

## A.    The Board correctly declined to import a sequencing limitation into Claim 13.

Clearlamp is cognizant of this Court's guidance that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." (Br. at 44 (citing *Interactive Gift Express, Inc.*, 256 F.3d at 1342)). Clearlamp does not contend that claim 13 contains language that explicitly sets

forth an order. Accordingly, Clearlamp asked the Board (and now asks this Court) to make an exception to the *Interactive Gift Express*.

Clearlamp relies on two lines of reasoning as a basis for this exception. First, Clearlamp posits that the claims implicitly require a particular order. (Br. at 45). Second, Clearlamp believes the specification of the '364 Patent mandates the importation of a temporal, order-based limitation into the claims. (Br. at 45-46). The Board considered these arguments and correctly declined to import a sequencing requirement into the "statically neutralizing" limitation. (A11-12).

In the only discussion of static neutralization in the '364 Patent specification, static neutralization occurs at two different times:

> To further clean the lamp surface 10, the lamp surface 10 is statically neutralized at 50. By neutralizing the lamp surface 10 to all static energy, particulate from the grinding and buffing steps may be more easily removed. A solvent is applied to the lamp surface 10 at 52 whereafter the lamp surface 52 is statically neutralized for a second time at 54.

(A51 at 3:64-4:3). In contrast, claim 13 recites one static neutralization step, and claim 1 recites no static neutralization steps. The specification thus does not evidence a clear intent to limit the claims by importing ordering limitations from the specification. *Hill-Rom Svcs., Inc.*, 755 F.3d at 1371.

Clearlamp's primary argument is that the structure of claim 13 mandates that the claimed static neutralization must happen after the grinding and buffing steps. (Br. at 44-45).

First, claim 1 does not recite the "statically neutralizing" limitation at all; otherwise, it is identical to claim 13.  An insinuation by Clearlamp that steps that create debris implicitly require static neutralization cannot be correct.

Second, Mr. Bell testified that "static neutralization ***could certainly be performed at other points in the process***, but only in addition to—not in place of—performing that step after the cleaning step as set forth in claim 13." (A378 at ¶37).[12]  This testimony confirms that it is not unreasonable to perform static neutralization at various points in the process.  The claimed static neutralization could reasonably refer to any of the static neutralization steps Mr. Bell opines could be performed at several points in the process.

Third, the recitation that the claimed static neutralization is "to facilitate the removal of all of the debris on the lamp surface" does not compel importing the limitation Clearlamp seeks to import.  Mr. Bell stated that "the purpose of the static neutralization step is to facilitate removal of captured dust and other particles from the lamp surface…" (A378 at ¶37).  Coupled with his concession that static neutralization could occur at any of several points during the process, his opinion is that static neutralization facilitates removal of all the debris that is on the lamp surface ***when the surface is statically neutralized***.  The antecedent basis for the

---

[12]    This concession also undermines Clearlamp's statement that "nowhere does the specification disclose such 'various times.'" (Br. at 46).

word "debris" in the phrase "removal of all the debris" is within the statically neutralizing limitation. The claim thus requires statically neutralizing only whatever debris is on the lamp surface *at the time of static neutralization* to facilitate removal of *that* debris. Nothing about that claim language requires that the debris be *all debris (if any) created during grinding and buffing*.

Clearlamp's construction also cannot be correct because it is narrower than the proposed amendment that was the subject of Clearlamp's Motion to Amend. (A763). There, Clearlamp sought to amend the claim such that static neutralization must occur after evening but can occur before grinding or buffing. (A763; *see also* A39-40 (claim 37'')).

Clearlamp's argument about the relative timing of removal of the lamp and subsequent removal of the clear coat finish is irrelevant. (Br. at 47). Clearlamp has never argued or briefed the issue of whether a sequencing restriction exists between the first two claim limitations of claims 1 and 13.

The Board's conclusion that no ordering limitation should be imported into the "statically neutralizing" limitation is correct and should be affirmed. (A11-12). Since Clearlamp does not dispute that Kuta discloses the act of statically neutralizing, this Court should also affirm the Board's finding that the prior art discloses the "statically neutralizing" limitation of claim 13. (A23-25).

### B.    If this Court imports a sequencing limitation into claim 13, remand is appropriate.

The record supports a finding that, even with Clearlamp's narrowing limitation, the prior art discloses this limitation.  For example, as LKQ argued in its Reply (A769), Kuta discloses flushing the lamp surface with water while sanding with an "ultra-fine 1500 grit sanding pad."  (A122 at ¶23).  It discloses buffing and coating the lamp to achieve a "like-new condition."  (A122 at ¶23).  It also teaches that the clear coating is applied "[a]fter preparing the lens."  (A122, ¶26; *see also* A769).  The Board found that "Kuta explains that its application of 'flushing water' upon the surface of a lens is done until that water 'turns clear' and the sanding process is stopped."  (A24 (citing A122 at ¶23)).  Mr. Katsamberis testified that "[t]o obtain proper adherence, the lens surface must be clean of any surface contamination when the clear coating is applied."  (A418 at ¶21; *see also* A769).  Mr. Bell testified as follows:

> Q.    Prior to 2005, would a person involved in manufacturing headlamps have known to statically neutralize a headlamp[] before spraying it with clear coat?
>
> A.    Oh, I think so.

(A849 at 86:16-20; *see also* A769).  This evidence provides a factual basis to find that if debris is created at in Kuta's process, it is removed with a water flush to "prepar[e] the lens" prior to applying the clear coating.

LKQ's Reply also cited to Cole, an exhibit to the Petition.  (A769 (*citing*

A1064-1072)).[13]    Cole discloses static neutralization at the time required by

Clearlamp's construction:

> [A] method of restoring a discolored headlight lens without removal of the lens from the vehicle involves wet abrading an outer surface of the lens with successively finer grit abrasives until a smooth surface is achieved exhibiting no visible discoloration; polishing the outer surface of the lens with an aqueous paste abrasive polish; ***cleaning any residue from the outer surface of the lens***; and applying a sealer…to the outer surface of the lens…

(A1070 at 6:39-46; *see also* A1069 at 3:54-61; A769).

If this Court adopts Clearlamp's construction, it should either affirm based

on the factual record or remand to allow the Board to weigh the evidence under the

new, narrow construction.

## IV.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDINGS REGARDING SECONDARY CONSIDERATIONS

The Board was correct in concluding secondary considerations cannot

establish nonobviousness as a matter of law given the strength of LKQ's

obviousness case.    (A28 (*citing Wyers*, 616 F.3d at 1246)); *see also DyStar*

*Textilfarben GmbH & Co. Deutschland KG*, 464 F.3d at 1371.

This Court has held that "[o]bjective evidence of secondary considerations

---

[13]    The Board declined to adopt Clearlamp's unnecessarily limiting construction, evidencing the unforeseeability of Clearlamp's argument.    Reliance on this additional of-record art in the Reply is therefore proper.    (*See infra* at A.V.B).

of patentability are fact determinations which we review for substantial evidence." *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc*., 711 F.3d 1348, 1356 (Fed. Cir. 2013) (citing *Para–Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc*., 73 F.3d 1085, 1088 (Fed. Cir. 1995)).  To the extent this Court disagrees with the Board's conclusions regarding secondary considerations as a matter of law, the Board's factual findings regarding secondary considerations are supported by substantial evidence and should remain undisturbed.

The Board here considered two types of secondary considerations, copying and commercial success, and found that neither altered its conclusion that Claims 1-10, 13, or 14 are not obvious.  (A28-31).  Based on the evidence before it, the Board found that Mr. Paperi did not reveal enough of his process to enable copying.  (A29-30).  Clearlamp only appeals only the Board's finding with regard to copying, and in so doing merely regurgitates some (but not all) of the evidence the Board considered.  (Br. at 53-54).

The only testimony of record regarding the alleged copying was the hearsay testimony of Robert Sandau regarding his dealings with Mr. Paperi.  The Board considered the portion of Mr. Sandau's testimony that Clearlamp quoted and also the portion of that testimony that Clearlamp obfuscated with ellipses:  "There was no product and no one working in the facility when they took us through so we couldn't actually see them showing what they were doing."  (A29 (citing A544 at

50

27:19-22)).  The Board also relied on the following testimony from Mr. Sandau:

> Q.    Can you remember how much [Mr. Paperi] told you about his process during that tour?
>
> A.    He explained all of the process.  They did not tell us the exact coatings they were using.  I asked, I did ask.  I mean again, if I was going to repair it and do the same thing I wanted to use the best materials possible and do it in the same manner.
>
> Q.    So when you asked, what did he say?
>
> A.    He wouldn't tell me.  He wouldn't tell me.

(A551 at 54:19-55:5; *see* A29-30).   Also un-cited in Clearlamp's brief is the testimony of LKQ's corporate witness that LKQ purchased a separate company that was already performing the headlamp refurbishing process accused of infringing today.  (A772 (citing A929-930 at 58:21-24)).

Clearlamp's case law is distinguishable.  (Br. at 54-55).  In *Spectralytics, Inc. v. Cordis Corp*., the patent owner did not prevent the defendant from viewing the allegedly copied machine.  649 F.3d 1336 (Fed. Cir. 2001).  That is not the case here; the Board found Mr. Paperi took affirmative steps to hide aspects of his process, including the clear coating used, by giving a tour when the process was not operating.  (*See* A29-30).  Moreover, in *Spectralytics*, this Court decided whether sufficient evidence supported a jury's factual finding.  *Id*. at 1344.  Thus, *Spectralytics* does little to show that insufficient facts exist to support the Board's findings here.  Clearlamp's reliance on *Hughes Tool Co. v. Dresser Industries Inc.*

is similarly problematic, as the Court there found that the evidence was sufficient to support the district court's finding.  816 F.2d 1549, 1556 (Fed. Cir. 1987).

Clearlamp argues that the particular clear coating Mr. Paperi hid is "an unclaimed feature of the patent."  (Br. at 55).  This is untrue.  The only reason the Board declined to invalidate Claims 11, 12, and 15 to 24 of the '364 Patent is that it did not find that the specific clear coat curing technology required by those claims was shown in the art of record.  (*See* A25-27).  Moreover, Clearlamp's advocacy suggests the illogical result that copying a general concept could suggest nonobviousness of a broad claim, but would not suggest nonobviousness of a narrower claim.

Clearlamp argues that LKQ appropriated the "novel features of the '364 Patent," which is "the only process of record that results in a refurbished lamp that is suitable for the original equipment refurbished parts market…"  (Br. at 58).  No claim of the '364 Patent is required to result in lamps that are "suitable for the original equipment refurbished parts market."  (*See* A24-25).  Clearlamp's Motion to Amend tried unsuccessfully to add this limitation to the claims.  (*See, e.g.*, A38-39).  In denying Clearlamp's Motion to Amend, the Board actually found the opposite of what Clearlamp now argues: "The record sufficiently reflects that a skilled artisan would have recognized that a vehicle lamp may be returned to a state that is 'like-new,' or like its 'original state,' such that it may be considered in

'original equipment condition.'"  (A39).

The Board considered all of the evidence and arrived at the conclusion that "Clearlamp has not shown persuasively that LKQ's refurbishing process is due only to an act of copying of the particular process practiced by Dr. [sic - Mr.] Paperi, rather than simply through the practice of the teachings of the prior art." (A30).  Clearlamp's briefing does nothing to undermine the substantial evidence supporting the Board's finding.

## V.    THE BOARD DID NOT PROCEDURALLY ERR

This Court accepts the Board's interpretation of USPTO regulations unless it is "plainly erroneous or inconsistent with the regulation."  *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004).  Clearlamp does not challenge the Board's interpretation of any USPTO regulation.

### A.    The Board correctly applied the broadest reasonable interpretation standard.

The Board applied the broadest reasonable interpretation ("BRI") in construing the claims of the '364 Patent.  (A7).  Until this appeal, Clearlamp did not challenge the propriety of this standard; the parties' arguments during Trial all used BRI as the applicable standard.

The USPTO adopted the BRI standard in *inter partes* review (37 C.F.R. § 42.100(b)) by regulation pursuant to an express grant of rulemaking authority.  35 U.S.C. § 316(a)(2), (5), (9).  The BRI standard is not "procedurally defective,

arbitrary or capricious in substance, or manifestly contrary to the statute," so it is binding on the Board. *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001).

The BRI standard serves the same purpose in the post-grant review context that it does in other USPTO proceedings, and for the same fundamental reason: the statute provides the patent owner with an opportunity to amend claims to clarify the scope of a challenged patent. *See* 35 U.S.C. § 316(a)(9); *see also In re Yamamoto,* 740 F.2d 1569, 1572 (Fed. Cir. 1984) ("An applicant's ability to amend his claims to avoid cited prior art distinguishes proceedings before the PTO from proceedings in federal district courts on issued patents."). Unlike in district court litigation, the America Invents Act ("AIA") permits patent owners to submit "a reasonable number of substitute claims" for each challenged claim. *See* 35 U.S.C. § 316(d)(1)(B). The BRI standard serves the public interest by allowing a patent owner to narrow or add precision to their claims, reducing the possibility that claims, finally allowed, will be given broader scope than is justified. *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004). This Court has consistently upheld the BRI standard in both pre-issuance and post-issuance proceedings. *See, e.g., In re Reuter*, 670 F.2d 1015, 1019 (C.C.P.A. 1981) (reissue); *In re Yamamoto,* 740 F.2d at 1571 (*ex parte* reexamination); *Leo Pharm. Products, Ltd. v. Rea,* 726 F.3d 1346, 1352 (Fed. Cir. 2013) (*inter partes* reexamination).

While 37 C.F.R. § 42.100(b) requires the use of BRI for the claims of an "unexpired patent," the Board's precedent confirms this broad construction does not apply for expired patents:

> The Board's interpretation of the claims of an expired patent is similar to that of a district court's review. *See In re Rambus, Inc*., 694 F.3d 42, 46 (Fed. Cir. 2012). We are guided, therefore, by the principle that the words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question at the time of the invention. *Phillips v. AWH Corp*., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006) (citing *Phillips*, 415 F.3d at 1312-17).

*TRW Automotive US LLC v. Magna Electronics Inc.,* Case No. IPR2014-00251, June 26, 2014 Order, Paper No. 14, p. 6. Where amendment is possible (*i.e.*, in the case of an unexpired patent), BRI is the correct standard to apply. Where amendment is no longer an option (*i.e.*, in the case of an expired patent), the Board rightly applies a standard more akin to that dictated by *Phillips* and its progeny. "The use of the broadest reasonable interpretation encourages patent owners to remove ambiguities and to narrow their claims by amendment, such that the inventor's contribution to the art is expressed in clear, precise and unambiguous terms." *SAP America, Inc. v. Versata Development Group, Inc.*, Case No. CBM2012-00001, June 11, 2013 Order, Paper No. 70, p. 10.

Clearlamp's assertion that the BRI standard is inconsistent with the law because issued patents enjoy a presumption of validity under 35 U.S.C. § 282 is flawed. The presumption of validity under 35 U.S.C. § 282 *does not* apply in *inter partes* review. *See* 35 U.S.C. § 316(e) ("[P]etitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence"). The Board has recognized that notwithstanding which standard is applied, "there still would be no presumption of validity, and Petitioner's burden of proof is still by a preponderance of the evidence. Also, we will not be applying a rule of construction with an aim to preserve the validity of claims." *Cisco Systems, Inc., v. AIP Aquicistion*, Case No. IPR2014-00247, *LLC,* July 10, 2014 Order, Paper No. 20, p. 3.

Clearlamp's assertion that 37 C.F.R. § 42.100(b) is a substantive rule in excess of the USPTO's authority under 35 U.S.C. § 2 is equally unfounded. Congress expressly authorized the USPTO to promulgate regulations establishing and governing *inter partes* review. 35 U.S.C. § 316(a)(4). Congress declined to limit the USPTO to adopting only "procedural" rules.

Regardless, the rule setting forth the BRI standard *is* procedural. It does not govern what is patentable; it sets forth a procedural framework for the Board to employ in analyzing claims before it; it is "an examination expedient." *In re Skvorecz*, 580 F.3d 1262, 1267 (Fed. Cir. 2009). As the USPTO observed, using

the BRI standard in post-grant review proceedings "does not change any substantive rights relative to the current practice," because initial examinations and reexaminations are likewise conducted according to the BRI standard. *Final AIA Proceeding Rules,* 77 Fed. Reg. at 48,697 (citing *In re Yamamoto*, 740 F.2d at 1571). Moreover, the BRI framework applies not only for analysis of validity, but for efforts by patent owners to amend claims.

The Board employed the proper procedural framework, which was properly promulgated pursuant to the power granted by Congress, and did not legally err.

### B.    The Board properly considered LKQ's Reply and the evidence submitted therewith.

The AIA charged the USPTO with drafting regulations "providing the petitioner with at least 1 opportunity to file written comments" after institution of an *inter partes* review. 35 U.S.C. § 316(a)(13). The USPTO promulgated rules pursuant to this authority: "[a] reply may only respond to arguments raised in the corresponding…patent owner response." 37 C.F.R. § 42.23.

Clearlamp does not object to the statutory or regulatory framework related to the filing of replies to patent owner responses. It does not assert that LKQ's Reply did not respond to issues raised in Clearlamp's Patent Owner Response. (*See, e.g.*, Br. at 39). It also does not object to any cross-examination testimony as being outside the scope of direct examination. Instead, Clearlamp objects to certain arguments and evidence presented in LKQ's Reply as being ***new*** arguments or

evidence, not present in the Petition, on which it alleges the Final Decision should not have been based. (*See* Br. at 2, 11, 12, 38-39, 40, 42, 50-51, 53). This is not the standard by which to judge the Reply or the evidence cited therein.

Clearlamp argues about alleged "gaps" in the Petition. (Br. at 12, 27, 39-40, 50-51). Its Preliminary Response undermines this assertion, as the ***only*** argument in the Preliminary Response regarding the deficiencies of Kuta/Butt or Kuta/Eastwood involve the propriety of removing a lamp from a motor vehicle. (A243, 245, 253-259). The Board noted in instituting the Trial that "LKQ contends that Kuta accounts for all of the features required by claims 1-24 with the exception of the step in claims 1 and 13 of 'removing the lamp from a motor vehicle.' ***Clearlamp does not challenge that contention***." (A289 (citations omitted)). That the Preliminary Response did not identify any "gaps" undermines Clearlamp's allegation that LKQ's Reply filled "gaps" in the Petition as opposed to properly responding to arguments raised in the Patent Owner Response.

The primary argument Clearlamp alleges was erroneously raised in the Reply involves applying Kuta's process to a lamp that has been removed from a vehicle. Notwithstanding the fact that this argument was presented in the Petition (*see supra* at II.A.1(1)) and that Clearlamp did not dispute the presence of any of the limitations it now asserts are not disclosed until its Patent Owner Response (A289), LKQ's Reply properly responded to the Patent Owner Response's

assertion that **Kuta alone** does not disclose fully removing an original clear coat finish. (*See* A335-339; A763-764 ("PO argues Kuta does not disclose 'fully' removing a clear coat...")). Clearlamp also argues that the Board "relies upon argument and evidence that was not presented in the Petition" to find that the prior art discloses the "spraying a replacement clear coat" limitation. (Br. at 50-51). This is also untrue (*see supra* at I.A), and is likewise undermined by the Board's finding that Clearlamp did not challenge the Petition on this point in its Preliminary Response. (A289).

The Board recognized at the time of institution that "[t]here is no dispute between LKQ and Clearlamp in connection with the meaning of any claim term." (A289). Clearlamp's arguments regarding the "removing an original clear coat" limitation and the "statically neutralizing" limitation are therefore premised on unforeseeable claim construction arguments raised for the first time in the Patent Owner Response. Any arguments in LKQ's Reply necessitated by Clearlamp's narrow claim construction positions were unforeseeable at the time of the Petition, and properly responded to issues raised for the first time in Clearlamp's Patent Owner Response.[14]

---

[14]    Clearlamp argues it is unfairly prejudiced by the Board's procedure because it was not able to respond to the Board's claim construction analysis. (Br. at 32, 33, 51). This situation was one of Clearlamp's own making, as Clearlamp did not raise any claim construction arguments in its Preliminary Response.

Clearlamp objects to the Reply's use of the cross-examination trial testimony of Clearlamp's experts; however, that evidence could not have been presented in the Petition because it did not exist until LKQ conducted its statutorily authorized depositions after institution of the Trial. 35 U.S.C. § 316(a)(5); *see also* USPTO Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,757 (Aug. 14, 2012). Moreover, in *inter partes* review, the Federal Rules of Evidence generally apply. 37 C.F.R. § 42.62. The Federal Rules of Evidence permit cross-examination, and permit testimony elicited through cross-examination of expert witnesses to be used affirmatively by the party eliciting such testimony. *See, e.g.*, Fed. R. Evid. 611, 702. Clearlamp has not objected that LKQ's cross-examination exceeded the scope of direct examination. *See* Fed. R. Evid. 611(b). Ignoring evidence regarding how a person of skill in the art would understand the prior art combinations purely because it emanated from Clearlamp's witnesses is contrary to the statutes, the rules, and the Federal Rules of Evidence.

The regulations also provided Clearlamp with the sole mechanism to exclude evidence it believed was not properly presented: "A motion to exclude evidence ***must be filed to preserve any objection***." 37 C.F.R. § 42.64(c). Clearlamp did not so move, and thus waived its right to challenge the Board's reliance on the evidence (including Clearlamp's experts' testimony) cited in the Reply.

Finally, Clearlamp's failure to object to LKQ's Reply (or the evidence cited therein) during the Trial means the Board did not have an opportunity to consider whether LKQ's Reply was proper. The Final Decision acknowledged LKQ filed a Reply (A4), relied on LKQ's Reply (A8, 10, 11, 26), and did not indicate the Reply was improper. The Board has thus confirmed the propriety of LKQ's Reply, and Clearlamp's belated attempts to undermine that conclusion are unavailing.

## VI.    IF THIS COURT DOES NOT AFFIRM, IT SHOULD REMAND

Clearlamp asks this Court to reverse, not remand, if it finds in Clearlamp's favor. (Br. at 58-59). Clearlamp asserts that claim construction and obviousness are "both…reviewed by this court *de novo*" so the case "need not be remanded." (Br. at 59). This is an oversimplification; "[w]hether a claimed invention is unpatentable as obvious under § 103 is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d at 1316.

If the Court adjusts the claim construction standard to be applied, this case should be remanded, as the parties presented arguments under only the BRI standard. Both the correct claim constructions conclusions and corresponding factual findings would need to be redone under any new standard. Similarly, if the Court adopts Clearlamp's narrow construction of the "statically neutralizing"

limitation, the Court should remand so the Board can make factual findings consistent with this new, narrow interpretation.[15]

The Board dismissed LKQ's Motion to Exclude (A1073-1090) as moot, concluding that "in connection with each of the Exhibits, or portions thereof, that LKQ seeks to exclude, the underlying issue for which the Exhibit was advanced was decided in LKQ's favor." (A42). If this Court reverses so as to un-moot the Motion to Exclude, remand is needed for the Board to consider the merits of that motion.

Clearlamp argues that the 18 month window has closed. (Br. at 58-59). However, the pertinent statute refers to a time for issuance of a *final determination* (35 U.S.C. § 316(a)(11)) and the pertinent regulation refers to *pendency before the board* (37 C.F.R. § 42.100(c)). With the issuance of the Final Decision, both time periods were satisfied. Clearlamp's position on the appeal that Clearlamp (not LKQ) brought in this Court is also at odds with 35 U.S.C. § 319, which specifically permits appeal by parties dissatisfied with a Board final decision.

---

[15]    If the Court accepts Clearlamp's invitation to limit the "removing an original clear coat" limitation, the Court should nonetheless affirm. (*See supra* at A.II).

# **CONCLUSION**

For the above reasons, LKQ respectfully requests that this Court affirm the

Final Decision that Claims 1-10, 13, and 14 are unpatentable.

Dated: October 30, 2014          Respectfully submitted,


/s/ Jason A. Engel
Alan L. Barry
Jason A. Engel
Benjamin E. Weed
**K&L GATES LLP**
70 W. Madison St., Suite 3100
Chicago, IL  60602
(312) 372-1121

*Attorneys for Appellee LKQ Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing APPEAL BRIEF was electronically filed with the Clerk of Court using the CM/ECF System on the 30th Day of October, 2014, which will serve via e-mail notice of such filing to all counsel of record including:

Matthew L. Cutler, Esq.
Bryan K. Wheelock, Esq.
Harness Dickey & Pierce, P.L.C.
7700 Bonhomme, Suite 400
St. Louis, MO 63105
(314) 726-7500

Nathan K. Kelley, Esq.
Joseph Matal, Esq.
Scott C. Weidenfeller, Esq.
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
(571) 272-9035

I further certify that I will cause six paper copies to be filed with the Court within five days of the Court's acceptance of the brief in accordance with ECF-10.

/s/ Jason A. Engel
Jason A. Engel
K&L Gates LLP
*Attorney for Appellee LKQ Corporation*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## <u>REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or FRAP 28.1(e).

- The brief contains 13,930 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or FRAP 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

- The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 Point Times New Roman Font.

Dated: October 30, 2014     Respectfully submitted,


/s/ Jason A. Engel
Jason A. Engel
K&L Gates LLP
*Attorney for Appellee LKQ Corporation*